THE STATE at Relation and to Use of EDMOND KOELN, Collector of City of St. Louis, v. LILLIAN SANDERS, Movent and Respondent; WILLIAM J. HELMING, Purchaser at Tax Sale, Appellant.—30 S. W. (2d) 986.

Division One, September 4, 1930.

*Louis H. Breuer* and *Frank Coffman* for appellant.

*Hall & Dame* for respondent.

LINDSAY, C.—This is an appeal from an order and judgment setting aside the sale of certain real estate, made by the sheriff of the city of St. Louis under an execution issued against Lillian Sanders as owner of the property, upon a judgment for delinquent taxes. The judgment rendered June 1, 1923, was for $729.99 and costs. Afterward, execution issued thereon, returnable to the December term, 1926. After due advertisement the sale of the property was made on October 25, 1926. William J. Helming was the purchaser at said sale, for the price of $1035, and paid that sum to the sheriff, who, on November 8, 1926, executed a deed to the purchaser.

The property in question is described and was described throughout the proceedings mentioned, as follows: "A lot in City Block No. 3709 having a frontage of seventy-five feet on Windsor Place by a depth of 140 feet; bounded on the north by alley, on the east by St. Alphonsus Street, on the south by Windsor Place and on the west by Hagedorn, in the city of St. Louis, Missouri."

On November 27, 1926, during the term at which the sale was made, Lillian Sanders filed her motion to set aside said sale and the deed made thereunder. The essential ground stated in the motion was

that the property was sold *in solido,* when the same was easily susceptible of being divided and sold in parts; and that part of the property which could have been easily and reasonably sold separate from the remainder, was of a market value much greater in amount than the judgment and all costs and expenses to be made out of the property. The movent, respondent here, alleged that the west part of the property was improved, having thereon a double brick house which had a rental value of $100 per month, · and that the vacant and unimproved part of the property lying to the east of said house had a length of 140 feet abutting on St. Alphonsus Street, and that this vacant part, having a width and frontage on Windsor Place of thirty or thirty-five feet, or more, could easily have been sold as a practicable method of executing the writ.

It was alleged that the market value of the entire property exceeded $10,000, and that the value of the ground, without any improvements, rated by its frontage of seventy-five feet on Windsor Place, was in excess of $50 per foot of such frontage.

On November 18, 1926, William J. Helming, the purchaser at the sale, executed a deed of trust upon the property to one Otto Karbe, as trustee, in favor of one Anna N. McCoy, purporting to secure the payment of promissory notes in the sum of $7,500, and said deed of trust was filed for record on the day it was executed.

On December 3, 1926, and during the same term—the October term, 1926—Lillian Sanders filed her supplemental motion setting up the execution of said deed of trust, and alleging that it was fictitious and without consideration, and executed in ·bad faith, and for the sole purpose of clouding her rightful title to the property. It can as well be stated now as later, that upon the hearing, Mr. Helming admitted in his testimony that this deed of trust was wholly without consideration, and that its execution was no more than his voluntary and individual act. No defense is put forth on appeal by Mr. Helming based upon that transaction, and no further reference need be made thereto.

It results that the only parties to be considered are Helming, the purchaser, and Lillian Sanders, · the defendant in the execution. Lillian Sanders is a colored woman. The regularity of the proceedings culminating in the sale is not in question. The solution of the only question actually in issue before the trial court turned upon the act of the sheriff, in offering and selling the property as an entirety, in view of the circumstances shown in the evidence. The sole question on appeal to be considered is the correctness and propriety of the action of the trial court in setting aside the sale under the circumstances shown. The court in setting aside the sale required the respondent to pay the purchaser the price paid for

the property, or to pay the same into court for his use. The amount was paid into court within the time prescribed.

The controversy is to be determined in view of the provisions of Section 1637, Revised Statutes 1919, and certain other statutory provisions to be mentioned hereafter, and the evidence in the record. Section 1637 is as follows:

"When an execution shall be levied upon real estate, the officer levying the same shall divide such property, if susceptible of division, and sell so much thereof as will be sufficient to satisfy such execution, unless the defendant in the execution shall desire the whole of any tract or lot of land to be sold together, in which case it shall be sold accordingly."

This section is a part of the Civil Code of Procedure, and applies generally to sales under execution. As germane to that section, indicative of the legislative intent, and pertinent in considering the sale here in issue, we refer also to Section 12946, Revised Statutes 1919, concerning the judgment to be rendered in a suit for delinquent and back taxes. That section specifies what shall be stated in a judgment rendered against the defendant in a suit for delinquent and back taxes. It provides, among other things, that "the judgment if against the defendant, . . . shall state that the real estate, or so much thereof as may be necessary to satisfy such judgment, interest and costs, be sold, and a special *fieri facias* shall be issued thereon."

In the case at bar there was no request that the whole tract be sold. The defendant in the execution was not at the sale, was not represented by any one at the sale, and testified she did not know the property was advertised for sale or that it had been sold, until informed of the fact by the purchaser, a few days after the sale.

Section 1637 has been under consideration in this court in numerous cases. In Shelton v. Franklin, 224 Mo. 342, the effect of that statute was considered by Court en Banc, in an opinion by GRAVES, J., and the prior decisions were extensively discussed, and the governing rules deduced therefrom were stated. In that case the sale was the subject of a direct attack by a bill in equity, but the conclusions stated and the elements of a successful attack are made applicable alike in an attack of that sort, and in an attack by motion. It was said (l. c. 363):

"From the cases we take the rule to be (1) that the statute is directory, (2) that by it some discretion is allowed the officer, (3) that an abuse of this discretion may be and should be reviewed by the court either upon motion or direct attack by a bill in equity, (4) that this attack should be made in seasonable time, (5) that the abuse of the sheriff's discretion by a sale *in solido* is only an

irregularity which may render the deed and sale voidable and not void.

"To these conclusions may be added that the attack by bill in equity is good as against a subsequent purchaser with knowledge or notice of the unwarranted violation of the sheriff's discretion and knowledge or notice of the injury done the execution debtor thereby.

"So that under these authorities, the deed in question is not void upon its face for the reason now under discussion, but is only voidable. To make a case the plaintiff would have to show (1) a sale *in solido,* (2) that such was abuse of the discretion lodged with the sheriff, (3) consequent damage and injury to the judgment debtor, (4) a seasonable application for redress, and (5) if against a subsequent grantee knowledge and notice upon his part of the things mentioned in the preceding paragraph, and reiterated in the first three numbered subjects in this paragraph."

Under the facts in the record there was before the trial court virtually only one question—that of whether there was an abuse of the discretion lodged with the sheriff. The evidence shows, without dispute, that the property was offered for sale only as an entirety and was so sold. Concededly, the application of the respondent to set aside the sale was seasonably made; and the evidence for respondent strongly tends to show that the property was readily susceptible of division into two parts; that the market value of the entire property was approximately $10,000; that a division or severance of the vacant ground could have been made, affording a frontage of approximately thirty-five feet on Windsor Place and running back 140 feet along St. Alphonsus Street, and that the market value of the ground, unimproved, was $50 per front foot of its frontage on Windsor Place; that as a consequence of the sale *in solido* there was damage and injury to the respondent. Upon the question of the value of the property, particularly the vacant part, appellant introduced some counter evidence. The trial court made a finding that the property was susceptible of division, the west half of the lot carrying the improvement—the double residence thereon,—was of the value of $8,500, and that the east half of the lot, covering the unimproved part, was of the value of $1,500; that the improved part could have been sold for more than enough to satisfy the execution and costs, leaving to respondent, at least, the unimproved part. The weight of the evidence is to that effect.

We will mention a certain other phase of the evidence emphasized by the appellant in his brief. The evidence shows that the improvement, the double dwelling house, had been erected about thirty years; that formerly, the neighborhood was a desirable residence section of the city, for white people, but that later, and at the time of the sale, the block in which the property was situated, as well as some of the other property adjacent, was given over to colored

people. The evidence, however, shows that this property is situated at a distance of only one short block west from Grand Avenue, an important street in the city of St. Louis. Its nearness to Grand Avenue was regarded as a substantial element of value, by the several witnesses engaged in the real estate business, and called by respondent. The respondent testified that the rental return for the improved part of the property was $100 per month.

We mention a few of the cases involving the question here under consideration: State ex rel. v. Yancy, 61 Mo. 397; Gordon v. O'Neil, 96 Mo. 350; Corrigan v. Schmidt, 126 Mo. 304; Yeaman v. Lepp, 167 Mo. 61; Mason v. Wilks, 288 S. W. 936. It is also to be considered in this case that since the sale was made under an execution issued out of the circuit court, that court had control over its own process to prevent injustice. [State ex rel. v. Davidson, 315 Mo. 549; State ex rel. v. Innes, 137 Mo. App. 420, and cases there cited.]

It may be granted as suggested by counsel for appellant that mere inadequacy of price is not a ground for setting aside a sale under execution. But, inadequacy of price is a fact considered when there are other circumstances tending to impeach the fairness of the sale. It may be considered in a case of this kind in view of the policy expressed in the statute, and the sale as an entirety. In Holden v. Vaughan, 64 Mo. 588, it was held that a motion such as we have here, is addressed to the law side of the court. See also State ex rel. v. Davidson, supra; State ex rel. v. Innes, supra. Clearly, in cases such as this, inadequacy of consideration, and the feasibility of selling a part of the property as having a value sufficient to satisfy the execution, are to be considered in determining the ultimate question, or rather, we may say, the existence of two of the elements stated in the Shelton case: One, that of damage to the execution defendant by the failure to offer for sale a part of the property; the other, abuse of the discretion lodged in the sheriff, in offering and selling the property only as an entirety. As we view it, and taking this motion as addressed to the law side of the court, the findings and judgment of the court are supported by substantial evidence. Likewise, if viewed as the exercise of control of the court over its own process in the prevention of an injustice and having in view equitable principles, the action of the court is supported by the greater weight of the evidence.

It results that the judgment is affirmed. *Seddon,* and *Ellison, CC.,* concur.

PER CURIAM:—This opinion written by our former commissioner, the late JAMES D. LINDSAY, is adopted as the opinion of the court. All of the judges concur.