BIll GRIGGS, Respondent,

v.

George C. MILLER, Trustee for the Estate of W. A. Brookshire, Appellant, Glen Powell, Respondent.

No. 49268.

Supreme Court of Missouri,

Division No. 2.

Sept. 9, 1963.

On Motions to Modify for Rehearing or to Transfer to Court En Banc Denied Oct. 7, 1963.

Supplemental Opinion Jan. 10, 1964.

William R. Clark, Columbia, for appellant.

Alexander & Wayland, Columbia, Attorneys at Law, for respondents.

WALTER H. BOHLING, Special Commissioner.

Bill Griggs, on January 19, 1961, sued W. A. Brookshire in ejectment for the possession of a 322 acre farm in Boone County, Missouri, and for damages for withholding possession. Plaintiff had purchased 'the farm for $20,600 on January 16, 1961, at a public sale under a general execution against defendant. Defendant filed an application to disqualify the official circuit judge and the Supreme Court ordered the temporary transfer of the Honorable Lawson Romjue, Judge of the Forty-first Judicial Circuit of Missouri, to hear the case. Defendant filed an answer and counterclaim. Defendant's answer was a general denial, and his counterclaim sought to set aside the sheriff's execution sale and deed. Glen Powell, who as Sheriff of Boone County conducted said sale and was grantor in said deed, was made a third-party defendant upon the application of defendant. The cause was considered and treated by the parties and the court "as one of 'equitable cognizance.'" The court found the issues for the plaintiff and against the defendant on plaintiff's petition; for the plaintiff and the third-party defendant on defendant's counterclaim; and that plaintiff was entitled to $2,483.24 damages by reason of defend-

ant's withholding of possession of said farm from January 18, 1961, to November 15, 1961, the date of said judgment and decree, and that plaintiff recover $250 per month from and after November 15, 1961, for so long as defendant withheld possession from plaintiff. Defendant Brookshire, after filing his notice of appeal, was incarcerated in the Missouri Penitentiary. Chapter 460 and § 222.010. (Statutory references are to RSMo 1959 and V.A.M.S.). Thereafter, upon application of plaintiff Griggs, George C. Miller was appointed trustee of the Estate of W. A. Brookshire, and substituted as a party litigant for said Brookshire.

■ Defendant's contention that error was committed in overruling his motion to make plaintiff's petition in ejectment more definite and certain on the ground no cause of action was stated because, never having been in possession, plaintiff "must allege the nature of his title and deed under which he claims ownership" is overruled. The existing law does not require that a plaintiff in ejectment should ever have been in possession of the premises. Fitzpatrick v. Garver, 253 Mo. 189, 193, 194, 161 S.W. 714 [1, 2]. See Supreme Court Rules 89.02 (§ 524.040); 89.04 (§ 524.060); 89.05 (§ 524.070); 89.06 (§ 524.080), V.A.M.R. Plaintiff's petition conforms to said Rule 89.04, and allegations to the effect found in said petition have been held sufficient heretofore. Fitzpatrick case, supra; Bailey v. Williams, Mo., 326 S.W.2d 115 [2], and citations. Defendant's brief does not point out the applicability of his citations (Tetherow v. Chambers, 74 Mo. 183; Holloway v. Holloway, 97 Mo. 628, 640, 641, 11 S.W. 233, 235) to the issue presented and we find them not determinative thereof.

■ Defendant's attempt to disqualify Judge Romjue, who was transferred to hear the case, was without merit. Civil Rule 51.03(b), effective June 1, 1961, provides that "in no event shall more than one disqualification of judge be granted to either party."

A suit to set aside a prior execution sale and sheriff's deed of defendant's 322 acre farm is reported under the style of W. A. Brookshire v. Glenn Powell, Ralph L. Alexander and Don C. Carter, Mo., 335 S. W.2d 176; said Powell being the sheriff conducting said sale and the other named defendants being the purchasers thereat.

■ Ray Crouch recovered a judgment against W. A. Brookshire, defendant, in the Circuit Court of Henry County, Missouri, on July 15, 1959, for $1,966.69. Said judgment was affirmed on December 5, 1960, in Crouch v. Brookshire, Mo.App., 341 S.W.2d 336. The right to an execution follows immediately upon the rendition of a judgment. State v. Haney, Mo., 277 S.W.2d 632 [3], 55 A.L.R.2d 717; Rule 76.01. No supersedeas bond was given to stay an execution. Consult Rule 82.09; In re Craig, 130 Mo. 590, 593, 594, 32 S.W. 1121, 1122, 1123; Thompson v. Farmers' Exchange Bk., 333 Mo. 437, 62 S.W.2d 803, 812 [23]. A general execution was issued on said judgment to the Sheriff of Boone County on December 10, 1960. The Sheriff levied on defendant's 322 acre farm December 14, 1960, filed a notice of his levy in the office of the Recorder of Deeds of Boone County, and advertised and sold said real estate at public sale on January 16, 1961.

Dorothy Contestible, Administratrix of the Estate of Ralph Burton Collings, Deceased, recovered a judgment of $17,000 against William Albert Brookshire, defendant, in a wrongful death action in the Circuit Court of Audrain County, Missouri, on July 29, 1960. A general execution issued on said $17,000 judgment to the Sheriff of Boone County on December 23, 1960. This execution was mailed to Mrs. Contestible's attorneys in Columbia and was delivered to Sheriff Powell January 10, 1961. He levied upon defendant's 322 acres under said execution on January 11, 1961.

Defendant contends it was error to sell his 322 acre farm without attempting to make the judgment debt, interest and costs out of a portion of said farm.

Our Civil Rules contemplate that a judgment debtor is to be afforded reasonable protection in levying on and selling his property under execution. Civil Rule 76.21 (§ 513.095) provides in effect that if a judgment debtor gives the officer a list of his property sufficient to satisfy the execution, "the officer shall levy upon the property, and no other, if in his opinion it is sufficient; if not, then upon such additional property as shall be sufficient."

Civil Rule 76.24 (§ 513.210) provides: "When an execution shall be levied upon real estate, the officer levying the same shall divide such property, if susceptible of division, and sell so much thereof as will be sufficient to satisfy such execution, unless the debtor in the execution shall desire the whole of any tract or lot of land to be sold together, in which case it shall be sold accordingly."

And Rule 76.25 (§ 513.100) provides: "The person whose goods, chattels and real estate are taken in execution may elect what part thereof shall be first sold; and if he shall deliver to the officer having charge thereof a statement, in writing, of such election, three days before the day appointed for the sale, stating specifically what goods, chattels and real estate he desires to be first sold, and so on, until the execution be satisfied, the officer shall proceed according to such election, until sufficient money shall be made to satisfy the amount in the execution specified and costs."

It is stated in 21 Am.Jur., Execution, § 380, that an execution is not "leviable upon all the debtor's property, but only upon sufficient property owned by the debtor within the jurisdiction to satisfy the debt, interest, and costs"; and, while the officer is left to his own judgment, he "must exercise the care and discretion which a reasonably prudent man would exercise under like conditions and circumstances." And, with respect to the property to be sold when more than enough to satisfy the debt is seized, it is stated in § 384: "The general rule is that the execution officer may make a division of the property, if that is practicable, and sell only so much of it as is necessary to satisfy the debt." See Gordon v. Hickman, 96 Mo. 350, 356, 9 S.W. 920, 921, 922; 33 C.J.S. Executions § 107 b. A failure to divide real estate and sell only enough to satisfy the execution was considered an abuse of discretion in State ex rel. Koeln v. Sanders, 326 Mo. 76, 30 S.W.2d 986 [1], and a constructive fraud in Queen City Inv. Co. v. Kreider, Mo., 31 S.W.2d 1002, 1005 [10].

As stated by the trial court, plaintiff's testimony placed the value of defendant's 322 acres at $50,000 while defendant contended it was much higher, approximately $90,000.

The parties agree that the following liens appeared unreleased of record against defendant's 322 acre farm: (1) $10,000 deed of trust, Federal Land Bank of St. Louis, Sixth District. (2) $15,000 deed of trust, Ralph L. Alexander, Trustee, and "Holder of the Note" named as third party. (3) $3,516.46 Federal Tax lien under Internal Revenue Laws. (4) $3,606.43 County and State Tax lien.

The $15,000 note was payable to bearer ("Holder of the Note"), and was pledged with other collateral to secure defendant's $33,800 note of June 9, 1949, to the Boone County National Bank. The bank never owned the $15,000 note. The $33,800 note was paid in 1953, and the $15,000 note was delivered to defendant without marking it paid. Mr. Alexander, the named trustee, testified he knew the history of the note so far as the bank was concerned.

The $10,000 note was purchased by Mr. Alexander in March, 1960, when the holder of the note was threatening to foreclose. He did not want another to get defendant's farm. He advertised the farm for sale intending to buy it at the foreclosure. Defendant came in and paid the note, which was endorsed and delivered to defendant.

It was stipulated by the attorney for plaintiff and third party defendant that a

witness connected with the Internal Revenue Service, if present, would testify that the $3,516.46 Federal Tax lien had been discharged about four years prior to the trial; and also "I will stipulate the record will show that the matter has been paid."

It is not disputed that the County and State Tax lien of $3,606.43 remained in effect. We understand from the record the $15,000, the $10,000 and the $3,516.46 items were before this court in Brookshire v. Powell, Mo., 335 S.W.2d 176, wherein we considered a prior execution sale of defendant's farm for $2,300 and deed should be set aside. Sheriff Powell, as hereinbefore stated, was a party to said suit. We there said (181): "There were liens of record against the land aggregating approximately $40,000. However, it is not seriously disputed that all of the indebtedness whereon those liens were based (except a balance of Five or Six Thousand Dollars on a deed of trust, the three other executions here involved, and certain ad valorem taxes) had been adjusted or discharged, but not released of record. These facts were known, substantially, to the purchasers in formulating their bid. They admit the reasonable market value of the farm was from Forty to Forty-five Thousand Dollars. Plaintiff's evidence puts that figure at Seventy Thousand Dollars." The trial court in the instant proceeding considered defendant's interest in the 322 acres subject to the unpaid tax item, then approximating $4,000, which would place a value on defendant's interest of approximately $46,000 under plaintiff's estimates, and $86,000 under defendant's highest estimate of value. The trial court disregarded the $15,000, the $10,000 and the $3,516.46 items in reaching its fair valuation of defendant's interest. The record sustains this conclusion.

Defendant wrote Sheriff Powell under date of January 11, 1961, re the Crouch judgment, levy and sale, stating, among other things, that his land was worth in excess of $100 an acre; and: "I am restricting the amount which you can sell to the northeast 40 acres of said tract of land. This land is clear. There is no mortgage or encumbrance of any kind against it."

Defendant protested the execution sale to those assembled for the sale and stated in effect that the judgment involved had been obtained in Henry County and the case was on appeal and the judgment was not final; that: "After the judgment becomes final it will be paid"; that Crouch had in his possession cattle belonging to defendant worth $10,000 against which there was no lien; that "I have notified the sheriff that this farm is clear of any mortgages whatsoever; that it is worth approximately $50,-000.00; that one forty acre sold would be more than adequate. I have pointed out the forty acres, if it is sold, to be sold"; that he was certain the $17,000 judgment against him in the Contestible case would be reversed; that a supersedeas bond would be given; that this sale would be illegal and whoever bought the farm would buy a law suit. (The Contestible judgment, however, was affirmed January 8, 1962, in Contestible v. Brookshire, Mo., 355 S.W.2d 36.)

Sheriff Powell, who had been sheriff for about twenty years, admitted 40 acres of defendant's farm "might have been" worth far in excess of $2,000. Asked why he had not told defendant the 40 acres would not be sufficient, he would take 80 acres, Sheriff Powell answered: "I didn't intend to take 80 acres." He testified he had levied on and held three or four execution sales of defendant's 322 acre farm. He stated he did not know it was illegal to sell $50,000 worth of property to satisfy a $2,000 judgment; and there was testimony he had levied on the 322 acres to collect a $13.00 judgment, and to collect a $600 judgment. He stated "I checked the record and there was several thousand dollars" against all of the farm, and that is why "I levied on all of it." He also stated "I never checked the records." He did not levy on personal property because "It was much easier to do it this way." He knew defendant had stocks in various

corporations and had more than 200 head of Hereford cattle on the farm; that they might have sold for at least $200 a head on the market and as registered cattle would have brought more, and that 20 head of the cattle "might have" been sufficient to more than pay the Crouch judgment, interest and costs.

Ray Crouch, the judgment creditor, testified he wanted to and asked his attorney to levy on defendant's farm, and that he knew defendant had collateral with the Hartford Insurance Company to take care of the Crouch judgment. Sheriff Powell testified that Crouch had told him defendant had deposited sufficient collateral with the Hartford Insurance Company to take care of the Crouch judgment.

Supreme Court Rule 76.36 (§ 513.205) provides that real estate is to be sold in execution after "having previously given twenty days' notice of the time and place of sale, and what real estate is to be sold and where situated, by advertisement in some newspaper printed in the county." See Executions: Freeman, 3rd ed., p. 1798, § 308; 33 C.J.S. Executions § 211.

■ We said in Brookshire v. Powell, Mo., 335 S.W.2d 176, 180 [5]: "The officer's reception of a second writ of execution while the first is in his hands operates as a constructive levy on all property in his possession by virtue of the first writ." Freeman, supra, § 135, p. 602; 33 C.J.S. Executions § 102; 21 Am.Jur., supra, § 115. The receipt of a second execution and the constructive levy resulting therefrom do not authorize the sale of a judgment debtor's property under the second execution. Otherwise expressed: An officer, having advertised under one execution, is not authorized to sell under that and other executions later received. Executions: Freeman, supra, § 285e, n. 96; 33 C.J.S. Executions § 211, n. 3; p. 452; Mascraft v. Van Antwerp, 3 Cowen (N.Y.) 334; Van Camp v. Searle, 147 N.Y. 150 [7], 163, 164, 41 N.E. 427 [6], 431. In such circumstances the receipt of the second execution does not justify the sale of more land than would be proper under the advertised execution.

■■ A sheriff conducting an execution sale is the agent of the property owner and the judgment creditor, and his duty is to protect the interests of both and to see that the property is not sacrificed. City of St. Louis v. Peck, Mo.App., 319 S.W.2d 678, 682 [5]. We said in Gordon v. Hickman, 96 Mo. 350, 356, 9 S.W. 920, 921, 922: "If the property can be divided without prejudice, and a part will sell for the debt and costs, a part only shall be sold." Forced sales of property usually do not bring full value.

Sheriff Powell's advertisement of the sale of defendant's 322 acre farm was to "sell all of said real estate or as much thereof as it be necessary to pay the judgment of $1,966.69," in the Henry County Circuit Court, which, with interest and costs, amounted to $2,308.16 on the day of sale.

Defendant's farm was never advertised for sale under the Audrain County (Contestible) execution. Defendant first knew of the levy on his farm under the $17,000 Audrain County judgment about 30 minutes before its sale under the Crouch judgment. Sheriff Powell testified that he sold under the Henry County, and not under the Audrain County, execution.

Defendant's 322 acres was not divided for the purpose of selling but was sold as a whole to plaintiff for $20,600.00. The only bidders were Ed Orr, one of the attorneys for Mrs. Contestible, and Ralph Alexander, a bondsman and attorney for the sheriff. Plaintiff Griggs testified he heard the farm would bring enough to satisfy the two judgments about 15 or 20 minutes before the sale; that about 5 or 10 minutes before it was sold he decided to buy it because "it didn't bring any more than it did," and that he asked Mr. Alexander to bid for him. He stated he put in $8,000.00, and the Boone County National Bank and Alexander let him have the "rest of it," Alexander approximately $8,000.00, for which Griggs "signed a paper for him."

Sheriff Powell testified he paid out the $20,600.00 purchase money about two hours after the sale. He made a check to Ray Crouch for $2,143.69, and a check for $17,399.59 to Dorothy C. Contestible, Admrx. of the Estate of Ralph Burton Collings, Deceased and Orr and Sapp, Attorneys for the Plaintiff, and other checks for various items of costs involved in the levy and sale under the Henry County and Audrain County executions. The sheriff's deed was executed January 18th and recorded January 19, 1961.

It is not questioned but that this 322 acre farm, consisting of approximately eight forties, could have been offered for sale in parcels. Rule 76.24 (§ 513.210) contemplates that the officer "divide such property, if susceptible of division, and sell so much thereof as will be sufficient to satisfy such execution." This was not done, and we hold that it should have been so divided. In Brookshire v. Powell, Mo., 335 S.W.2d 176, 181, the disparity between the market value of this farm and a bid of $2,300 was considered so great as to require setting aside that execution sale and sheriff's deed. In the case at bar the Henry County judgment, interest and costs amounted to $2,308.16; and for that amount under said execution and the constructive levy of the Audrain County execution, but without an advertisement for sale under Rule 76.36, supra, under said Audrain County execution, it is sought to justify this forced sale for $20,600 of property valued at about $46,000. This record calls for the result reached in Brookshire v. Powell, supra 1. c. 181, 182.

This case was tried upon plaintiff's petition in ejectment, defendant's answer thereto, which, in effect, was a general denial, coupled with a counterclaim to set aside the execution sale and deed, and answers of plaintiff and third-party defendant to defendant's counterclaim. Defendant attempted to set up in his reply to the third-party's answer an action for damages against said third-party defendant. The court struck out of defendant's said reply all that portion thereof purporting to state a new cause of action for damages. This is a court of review. What we have said disposes of the contested issues presented by the pleadings below.

Defendant is entitled to relief upon doing equity. City Investing Co. v. Davis, Mo., 334 S.W.2d 63, 69, quoting 19 Am.Jur. § 463, p. 320; Jones v. McGonigle, 327 Mo. 457, 37 S.W.2d 892, 895 [6, 7, 8], 74 A.L.R. 550; Brookshire v. Powell, supra. Accordingly, if defendant will, within thirty days, deposit in this court, for the use and benefit of those entitled thereto, the sum of $20,600 with interest at the rate of 6% per annum from the date of sale until the same is paid, the decree appealed from will be reversed and the cause remanded with directions to cancel the sheriff's sale and the sheriff's deed to plaintiff made pursuant thereto; otherwise the decree will stand affirmed. In either event the costs are assessed against the estate of defendant Brookshire.

PER CURIAM.

The foregoing opinion by BOHLING, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.

## ON MOTIONS TO MODIFY AND APPELLANT'S MOTION FOR REHEARING OR TO TRANSFER TO COURT EN BANC.

PER CURIAM.

Appellant, defendant trustee, filed a motion to modify the last paragraph of the opinion by substituting for the phrase reading "within thirty days," which appellant admits was in accordance with his original brief, the phrase "within one hundred twenty days," the same to run from September 9, 1963. Upon appellant's presentation that as trustee he will have to negotiate a loan on the 322-acre tract to conform with the conditional decree of. this court, we think it equitable that he be granted this extension of time to comply

with our decree. City Investing Company v. Davis, Mo., 334 S.W.2d 63, 69; Jones v. McGonigle, 327 Mo. 457, 37 S.W.2d 892, 895[5-8], 74 A.L.R. 550. In this connection appellant states he will make such deposit immediately upon obtaining the funds therefor "and offers to abide by the conditional decree so entered."

■ Respondents have filed a motion to modify the last paragraph of the opinion by adding after the phrase "until the same is paid" the following: "and the sum of $1,610.63 with interest from July 6, 1962, at the rate of 6% per annum until the same is paid". Appellant does not question respondents' allegations that, in order to prevent the sale of the 322 acres for taxes, respondent Griggs "paid the amount of taxes and penalties for the year 1957 in the amount of $1,610.63 * * *." In these circumstances respondent is entitled to restitution of the taxes so paid, and the opinion is to stand modified in accord with respondents' request.

■ Appellant filed another "Motion to Modify Opinion or in the Alternative for Rehearing or for Transfer to the Court En Banc". Appellant's main contention in said motion is that respondents, notwithstanding the benefits conferred upon appellant, may not have any restitution because respondents' conduct was wrongful in connection with the execution sale. This contention is not well taken for a number of reasons. It is based upon the assertion that "the circumstantial evidence was sufficient" for a finding that respondent Griggs' actions, through his agent's conduct, was wrongful and mala fides (consult Restatement, Restitution, § 140; Annotation, 142 A.L.R. 310, 349); but the findings of the trial chancellor are in complete contradiction of appellant's contention. Furthermore, this issue first appears as a "Point" in appellant's reply brief. See S.Ct. Rule 83.05, V.A.M.R. A respondent is not afforded an opportunity to answer a "Point" first made in an appellant's reply brief; and we have many times said such points

are not for consideration. Orchard v. Missouri Lumber & Mining Co., Mo., 184 S.W. 1138[1]; In re Buder's Estate, Mo., 317 S.W.2d 828, 837[4, 5]; Magenheim v. Board of Education, Mo., 340 S.W.2d 619, 621; and see State ex rel. Joslin v. School Dist. No. 7 of Jasper County, Mo.App., 302 S.W.2d 497, 500[8]. Appellant's reply brief was not overlooked by the court. In addition, all the evidence is, and it is not contended otherwise by appellant, that the $20,600 purchase price bid was applied to the discharge of obligations constituting lawful charges against the 322 acres. Appellant's authorities, as we read them, do not hold that in the circumstances of this record an execution purchaser may not have restitution of the funds so applied upon the setting aside of the execution sale. See the ruling with respect to the taxes in Martin v. McCabe, 358 Mo. 118, 213 S.W.2d 497, 504, a case cited by appellant; Annotation, 142 A.L.R., loc.cit. 351. We consider it unjust to permit a judgment-debtor to recover back his property because an execution sale was irregular and at the same time allow him to profit by that irregular sale to discharge his judgment debts paid out of the purchase price for his property at the sale.

■ Appellant also contends that under S.Ct. Rule 83.17 the costs should not be assessed against him. This is a suit in equity, and a court of equity has inherent discretionary power to reasonably award or apportion the costs as a condition to the granting of relief. Amitin v. Izard, Mo. App., 262 S.W.2d 353, 356[2], and cases cited. Let the opinion be modified so as to apportion the costs equally between the appellant and respondents.

The opinion is modified in accord with the foregoing. In all other respects it stands as written.

### SUPPLEMENTAL OPINION

On January 7, 1964, the appellant-trustee deposited with the clerk of this court the principal sums of $20,600.00 and $1,610.63,

with interest thereon, for a total deposit of $26,019.26. The said sum of $26,019.26 was paid to the respondent Bill Griggs, and his written receipt and satisfaction of judgment was filed herein on January 10, 1964. The costs taxed in this court have also been paid. The court, therefore, finds that the appellant-trustee has fully complied with the conditions imposed by the opinion filed herein on September 9, 1963, and the per curiam opinion filed October 7, 1963, and is entitled to the relief contemplated by said opinions.

Accordingly, the judgment rendered by the trial court is reversed and the cause is remanded with directions to set aside and cancel the sheriff's sale and the sheriff's deed made to the plaintiff pursuant to said sale and to take such further proceedings as may be necessary to revest the defendant-trustee with title to the land in question in conformity with this and the other opinions rendered herein by this court.